**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MARK GNACINSKI,                         )
                                        )
           Plaintiff,              )
                                        )     Civil Action No. 05-336 Erie
                                        )
             v.                 )
                                        )
JO ANNE BARNHART,                       )
Commissioner of Social Security,        )
                                        )
           Defendant.              )

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J.,  J.

      Plaintiff, Mark Gnacinski, commenced the instant action pursuant to 42 U.S.C. §§ 405(g)
and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social
Security, who found that he was not entitled to supplemental security income ("SSI") under Title
XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  Gnacinski filed an application for SSI
on June 12, 2003, alleging disability due to back and neck impairments (Administrative Record,
hereinafter "AR", 77-78; 115).[1]  His application was denied, and a hearing was held before an
administrative law judge ("ALJ") on September 20, 2004 (AR 25-48; 58-61).  Following this
hearing, the ALJ found that he was not eligible for SSI under the Act (AR 16-21).  Gnacinski's
request for review by the Appeals Council was denied (AR 5-8), rendering the Commissioner's
decision final under 42 U.S.C. § 405(g).  The instant action challenges the ALJ's decision.
Presently pending before the Court are cross-motions for summary judgment.  For the reasons set
forth below, we will grant Defendant's motion and deny Plaintiff's motion.

**I. BACKGROUND**

      Gnacinski was born on January 12, 1963, and was forty-one years old on the date of the
ALJ's decision (AR 17; 77).  He has an eleventh grade education, and past relevant work
experience as an industrial cleaner and audio technician (AR 17; 116).

---

     [1]Gnacinski previously filed an application for SSI benefits on June 28, 2001 (AR 16).  On
October 26, 2001, the state agency denied his application, and no appeal was filed (AR 54-57).

Gnacinski has a history of arthroscopic surgery on both knees in 1998 and 1999 performed by Vincent Rogers, M.D. (AR 151). Gnacinski also has a history of left shoulder and chest pain (AR 148; 206-207; 263). Extensive testing ruled out cardiac disease (AR 148; 219-237). In addition to shoulder and chest pain, Gnacinski was treated for neck and back pain (AR 295-306; 313-314). Thoracic spine x-rays conducted on February 27, 2002 showed no spinal fracture, and only mild to moderate degenerative disease (AR 208).

On April 2, 2002, Gnacinski was evaluated by Adnan Abla, M.D., a neurosurgeon, for complaints of left upper extremity pain, burning and twitching (AR 330-332). On physical examination, Dr. Abla reported Gnacinski had normal reflexes, motor strength and sensation, with no muscle atrophy (AR 331). Lateral bending was noted to be painful however, and palpation of the cervical spine demonstrated tightness of the anterior sternocleidomastoid muscles (AR 331). Dr. Abla recommended conservative treatment, including the use of Flexeril and a soft cervical collar at bedtime, rather than surgical intervention (AR 332). He instructed Gnacinski to undertake swimming activities, as well as physical therapy for upper body strengthening and cervical isometric exercises (AR 332).

Gnacinski underwent physical therapy for complaints of neck and bilateral upper extremity discomfort from June 26, 2002 through August 15, 2002 (AR 333-335). His cervical range of motion was generally limited throughout, but he exhibited normal strength in his upper extremities (AR 335). Treatment consisted of intermittent cervical traction and trigger point therapy throughout the upper trapezius and shoulder regions (AR 334).

On December 29, 2002, Gnacinski presented to the emergency room complaining of neck and back pain resulting from a fall on Christmas night (AR 336). X-rays of the cervical spine were normal, with no significant degenerative changes identified, and no central canal stenosis or foraminal stenosis was seen (AR 341). Thoracic spine x-rays revealed some evidence of degenerative spurring, which was reported as not unusual in a patient Gnacinski's age (AR 342). Gnacinski was discharged with prescriptions for Vicodin ES and Motrin 600 (AR 337).

On January 9, 2003, Gnacinski was seen by Bryant Bojewski, D.O., his treating physician, and complained of neck and back pain following a drive to Florida (AR 190). On physical examination, he exhibited muscle spasm and a decreased range of motion in his neck

2

and back (AR 190). An MRI of the cervical spine and thoracic spine conducted on January 15, 2003 showed very minimal disc protrusion at C6-7, with no significant disc bulge or herniation, and no disc herniation of the thoracic spine (AR 350-351).

On April 24, 2003, Gnacinski's wife canceled his appointment with Dr. Bojewski claiming he was in too much pain to appear (AR 187). When seen by Dr. Bojewski on May 12, 2003, Gnacinski complained of mid thoracic pain, neck pain, numbness, tingling, and loss of sensation of his left leg and arms bilaterally (AR 186). He reported that he was self-employed and unable to work (AR 186). He claimed that his pain had progressively worsened the last three to six months, and rated his pain as a nine out of ten (AR 186). On physical examination, Dr. Bojewski reported that his muscle strength was 5/5 throughout the upper and lower extremities, he exhibited pain on rotation, several trigger points were found in the left trapezius and along the left paraspinal muscles from C7-T5, and his arms noticeably shook throughout the examination (AR 186). Dr. Bojewski administered a trigger point injection in the scapular thoracic area (AR 186). On May 19, 2003, Gnacinski reported some relief from the trigger point injection, but complained of left knee pain (AR 187). His medications were refilled (AR 187).

On July 16, 2003, Gnacinski returned to Dr. Rogers and reported locking and catching of his left knee with effusion (AR 147). On physical examination, Dr. Rogers reported he had a 120 degree range of motion, with effusion and quadriceps atrophy, but normal ligament testing (AR 147). He was given a prescription for Vicodin and Celebrex (AR 147). An MRI conducted July 28, 2003 revealed some osteoarthropathy of the medial joint space, small to moderate joint effusion, and degenerative changes in the menisci (AR 349).

Gnacinski began treatment with Paul Heberle, D.O. on April 1, 2003 (AR 405). On July 23, 2003, Dr. Heberle reported that Gnacinski had a decreased range of motion in his cervical spine and tenderness, for which he prescribed Duragesic, Lortabs and physical therapy (AR 406).

On August 13, 2003, Frank Bryan, M.D., a state agency reviewing physician, reviewed the evidence of record and opined that Gnacinski was capable of performing medium work (AR 365-371). Dr. Bryan concluded that Gnacinski's subjective complaints of disabling limitations were inconsistent with the clinical and objective findings of record (AR 374).

When seen by Dr. Heberle on August 19, 2003, Gnacinski had a decreased range of

motion of the cervical spine, and he was assessed with cervical disc disease (AR 403).  On
August 21, 2004, Gnacinski had continued restriction of motion with forward flexion and rotary
movements of the lumbosacral spine (AR 385).

 Gnacinski returned to Dr. Bojewski on October 2, 2003 and reported that his symptoms
had worsened (AR 185).  He complained of neck pain radiating into his left shoulder and down
his arms to his fingertips, with his left hand becoming numb periodically (AR 185).  He reported
similar symptoms on the right but milder (AR 185).  Dr. Bojewski discontinued his Naprosyn
and he was started on Bextra (AR 185).

 On October 5, 2003, thoracic spine x-rays showed degenerative changes, and a digital
motion study on November 20, 2003, showed deep cervical spasm and ligament dysfunction (AR
397; 399).

 When seen by Dr. Heberle on January 9, 2004, Dr. Heberle reported Gnacinski had tissue
texture changes and muscle spasms paraspinally in the lumbar, lower cervical and upper thoracic
regions (AR 393).  He assessed chronic pain secondary to discogenic disease (AR 393).  A
cervical spine MRI conducted on February 18, 2004 revealed a probable small focal point right
paracentral disc protrusion at the C4-5 level (AR 395).  Gnacinski complained of increased pain
with parathesias in the thumb and forefinger on March 1, 2004 (AR 391).  Dr. Heberle diagnosed
cervical discogenic disease and chronic pain, and prescribed physical therapy and Lortab (AR
391).  On April 26, 2004, Gnacinski reported a burning sensation in his neck and arms and
bilateral parathesias in his hands (AR 390).  Dr. Heberle renewed a Fentanyl patch and continued
the Lortab (AR 390).

 On July 29, 2004, Gnacinski reported increased back pain following his return from
vacation (AR 386).  He complained of lumbar pain radiating down his right lower extremity (AR
386).  Dr. Heberle reported that he was in obvious discomfort, and could not tolerate sitting for
any extended period of time (AR 386).  On physical examination, Dr. Heberle noted muscle
spasm of his paraspinal lumbar region (AR 386).  He administered a steroid injection, and
prescribed Duragesic, Percocet, Soma and a Medrol Dosepak (AR 387).  An MRI of the lumbar
spine dated July 30, 2004 showed small focal central disc protrusions at the L4-5 and L5-S1
levels (AR 380).

On September 10, 2004, Dr. Heberle reported Gnacinski had paraspinal spasm and tissue texture changes (AR 383). On October 7, 2004, Dr. Heberle noted that Gnacinski's chronic pain issues were legitimate with no aberrant behavior in the record (AR 409). He administered a steroid injection (AR 409).

Finally, on November 8, 2004, Dr. Heberle found Gnacinski had cervical spasm and his arms were slightly tremulous on physical examination (AR 408). He was assessed with cervical disc syndrome, cervical radiculopathy and chronic pain, and a Durogesic patch and a Medrol Dosepak were prescribed (AR 408).

Gnacinski and Karen Krull, a vocational expert, testified at the hearing held by the ALJ on September 20, 2004 (AR 25-49). Gnacinski testified that he suffered from back pain which originated at his neck and radiated down into his legs (AR 35). He stopped working in 2002 due to back pain (AR 35). He testified that he was able to lift 10 to 15 pounds, sit for approximately 20 minutes, stand for approximately 20 to 30 minutes, had difficulty rising from a seated position, and was unable to crouch (AR 35-36). Gnacinski claimed he only slept one to three hours per night due to pain, and during the day he would lay down for two to three hours to take the pressure off his back (AR 36-37). He claimed he had trouble holding things due to pain in his left arm, and suffered from tremors in both arms (AR 37). Gnacinski further testified that he had muscle spasms in his back and arms every "couple of hours" (AR 39).

The vocational expert was asked to consider an individual of Gnacinski's age, education, and vocational background, who could perform sedentary work with a sit/stand option (AR 45). The expert testified that such an individual could work as a cashier, information clerk and line monitor (AR 46). The expert further testified that such an individual would be precluded from employment if he needed to lie down for two hours in an eight-hour time frame (AR 46).

Following the hearing, the ALJ issued a written decision which found that Gnacinski was not eligible for SSI benefits within the meaning of the Social Security Act (AR 16-21). His request for a review by the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 5-8). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported

by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

### III. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3ʳᵈ Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ resolved Gnacinski's case at the fifth step. At step two, the ALJ determined that his discogenic disease of the lumbar spine, disc protrusion at the C4-5 level, degenerative change of the thoracic spine, and degenerative joint disease of the knees were severe impairments, but determined at step three that he did not meet a listing (AR 17). At step four, the ALJ determined that Gnacinski had the residual functional capacity to perform sedentary work with a sit/stand option (AR 18). At the final step, the ALJ determined that he could perform the jobs cited by the vocational expert at the administrative hearing (AR 20). The

ALJ additionally found that Gnacinski's allegations relative to his functional limitations were not entirely credible (AR 20).  Again, we must affirm this determination unless it is not supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Gnacinski fundamentally challenges the ALJ's conclusion relative to his residual functional capacity ("RFC").  "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3rd Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999); *see also* 20 C.F.R. § 404.1545(a).  An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner.  20 C.F.R. § 416.927(e)(2).  In making this determination, the ALJ must consider all evidence before him. *Burnett*, 220 F.3d at 121.  Social Security Ruling ("*SSR*") 96-5p provides:

> The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of the evidence.

*SSR* 96-5p (1996), 1996 WL 374183 *5.

Gnacinski first argues that the ALJ failed to make a "function by function" assessment of his physical limitations as required by Social Security Ruling ("*SSR*") 96-8p.  Under *SSR* 96-8p, the ALJ must determine an individual's functional limitations and assess his work related activities on a function-by-function basis including certain physical demands of work activity such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions. *SSR* 96-8p, 1996 WL 374184.  Only after that assessment is done may an RFC determination be expressed in terms of the exertional levels of work such as sedentary, light, medium, heavy or very heavy.  *Id.*  Gnacinski claims that the ALJ's alleged failure to comply with this directive is reversible error.  We disagree.  While the ALJ did not explicitly analyze each work related activity and the degree of Gnacinski's physical limitations, it is apparent from the ALJ's decision that, given his citation to *SSR* 96-8p, he functionally engaged in the required analysis (AR 17-18).

Moreover, the ALJ actually credited Gnacinski's own testimony relative to his physical

limitations, with the exception of his need to lie down for two to three hours per day.  Gnacinski testified that he could lift up to 15 pounds, sit for approximately 20 minutes and stand for 20 to 30 minutes (AR 35-36).  The ALJ concluded that he could perform the demands of sedentary work, but needed a sit/stand option (AR 18).  Sedentary work involves lifting no more that 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  *See* 20 C.F.R. § 416.967(a).  It involves standing/walking no more than two hours per day and sitting six hours per day, and does not require postural activities such as climbing, balancing, kneeling, crouching or crawling.  *SSR* 96-9p, 1996 WL 374185.  Because Gnacinski's credited testimony was equivalent to the definition of sedentary work, any alleged failure to have explicitly engaged in such an analysis does not dictate remand.

Gnacinski also challenges the ALJ's determination that his subjective complaints of disabling pain lacked credibility.   The Third Circuit has articulated the standard for considering a plaintiff's subjective complaints of pain which is:

> (1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence; (2) that subjective pain "may support a claim for disability benefits ... and may be disabling;" (3) that when such complaints are supported by medical evidence, they should be given great weight; and (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence.

*Ferguson v. Schweiker,* 765 F.2d 31, 37 (3rd Cir. 1985) (citations omitted).  In assessing subjective complaints, Social Security Ruling 96-7p and the regulations provide that the ALJ should consider the objective medical evidence as well as other factors such as the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any statements by treating and examining physicians or psychologists, and any other relevant evidence in the case record.  *See* 20 C.F.R. § 416.929(c); *SSR* 96-7p, 1996 WL 374186 at *2.  As the finder of fact, the ALJ can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record.  *See Baerga v. Richardson*, 500 F.2d 309, 312 (3rd Cir. 1974).  The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court.  *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3rd Cir. 1983).

We find that the ALJ evaluated Gnacinski's subjective complaints of pain consistent with the above standards. The ALJ discussed Gnacinski's testimony, examined the medical evidence in support of his testimony, and explained why he did not find him fully credible (AR 18-20). In support of his conclusion, the ALJ noted that while Gnacinski reported tremors, muscle spasms, and the need to lie down for two and one-half to three and one-half hours each day, there was no corroboration in the record of these complaints (AR 18). He further pointed to the fact that Gnacinski could engage in a range of daily activities, including driving, participating in household activities with his family, and clean and dress himself (AR 18). Finally, he noted that he exhibited no signs of discomfort during the hearing, was tolerating his treatment program satisfactorily, and was maintained on medication (AR 19).

The record supports the ALJ's determination that the degree of subjective pain reported by Gnacinski exceeded that reasonably supported by the evidence. We observe that with respect to his alleged arm tremors, most of the medical evidence documenting such complaints are based upon Gnacinski's own subjective reports to his physicians (AR 183, 330, 406). While Dr. Bojewski observed Gnacinski's arm shaking in May 2003, it was noted that he was "anxious" and "angry" during the examination, but nonetheless had full arm strength (AR 186). Moreover, the ALJ recognized that he had spasms in the cervical and lumbar region (AR 19), but there is no evidence of record documenting muscle spasms of the arms as claimed by Gnacinski. While Gnacinski claimed he needed to lie down daily for two and one-half to three hours, he never reported such limitation to his treating physicians, nor is there any evidence in the record suggesting that any of his physicians ever instructed him to lie down to alleviate the pain. *See Frederickson v. Barnhart,* 359 F.3d 972, 977 n.2 (8th Cir. 2004) (noting that "[t]here is no evidence in the record that [claimant] complained of such severe pain to his physicians or that they prescribed that he elevate his foot or lie down daily.").

Gnacinski claims that the ALJ failed to properly consider his treatment history and medication regime, but the ALJ's decision reflects that he specifically considered same. The ALJ observed that he reported to Dr. Abla in April 2002 that he had not undergone treatment for the previous year (AR 18; 330), and only conservative treatment had been recommended (AR 18). We further reject Gnacinski's claim that the ALJ erred in relying, at least in part, on his

9

daily activities in assessing his credibility. While Gnacinski's activities by themselves clearly would not support a denial of benefits, the ALJ did not rely primarily on his activities alone in determining his credibility. Gnacinski further claims that the ALJ ignored Dr. Heberle's statement in his treatment notes that his chronic pain issues were legitimate. The issue however, is not whether Gnacinski suffered from pain, a fact the ALJ certainly recognized, but whether such pain rendered him disabled. In this regard, none of Gnacinski's treating physicians opined that he had any disabling functional limitations, including pain. While Dr. Heberle noted that he could not sit for extended periods of time, this limitation was specifically adopted by the ALJ. Finally, the ALJ did not completely reject Gnacinski's testimony; indeed, he accepted his testimony as to his exertional limitations, and incorporated his claimed limitations in his RFC assessment. We therefore find that there was substantial evidence in the record, taken as a whole, to support the ALJ's credibility determination.

Finally, Gnacinski claims that the ALJ's RFC determination is flawed since the ALJ failed to base his determination on an opinion from an examining or non-examining medical source. In other words, Gnacinski appears to argue that there need be direct medical evidence in the form of an opinion to support a finding that he can engage in sedentary work with a sit/stand option. Gnacinski's argument overlooks the fact that the final responsibility for determining an individual's RFC is reserved to the Commissioner. *Schwartz v. Halter*, 134 F. Supp. 2d 640, 650 (E.D.Pa. 2001); 20 C.F.R. § 416.946(c). Moreover, the record is devoid of any medical evidence indicating Gnacinski's impairments resulted in physical limitations apart from those credited by the ALJ. The objective diagnostic studies consistently revealed only mild bulging discs or mild to moderate degenerative changes of the spine, with no significant spinal stenosis observed (AR 341-342; 350-351; 395; 380). Dr. Bryan, the state agency reviewing physician, concluded that Gnacinski's complaints of disabling limitations were inconsistent with the clinical and objective findings of record (AR 374). We therefore find that the ALJ's RFC determination is supported by substantial evidence.

### IV. CONCLUSION

An appropriate Order follows.

10

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARK GNACINSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-336 Erie |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this 7th day of August, 2006, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 9] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 11] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff, Mark Gnacinski. The clerk is directed to mark the case closed.

s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record.